# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| **United States of America,** | **REPORT and RECOMMENDATION** |
| Plaintiff, | |
| | **and** |
| v. | |
| | **DECISION and ORDER** |
| **Charles Rodman,** | |
| Defendant. | 24-cr-6126-EAW-MJP |

---

## APPEARANCES

**For Plaintiff:**          Matthew T. McGrath, Esq.
                            AUSA
                            100 State Street
                            Rochester, NY 14614
                            585-399-3965

**For Defendant:**          Paul J. Vacca, Jr., Esq.
                            45 Exchange Boulevard
                            Room 530
                            Rochester, NY 14614
                            585-966-9833

## INTRODUCTION

**Pedersen, M.J.** Before me are five motions filed as a part of Defendant Charles Rodman's omnibus motions. Four are dispositive, requiring me to issue a report and recommendation; one is not, so I decide it by decision and order. Because Rodman fails to raise issues of fact and makes perfunctory arguments, these motions should be denied. Accordingly, for the four dispositive motions, I report and recommend that the Hon. Elizabeth A. Wolford, Chief Judge, deny them in their entirety.

1

## RELEVANT DOCUMENTS

While I reviewed the entire docket in this matter to prepare my report and recommendation, I reference the below documents throughout this report and recommendation in the below-noted ways:

- Criminal complaint ("Compl.," ECF No. 1, Oct. 24, 2023);

- Affidavit of Matthew Walker, DEA Agent, in support of the criminal complaint ("Walker Aff.," ECF No. 1, Oct. 24, 2023);

- The indictment issued by the Grand Jury sitting in this District in late August ("Indictment," ECF No. 37, Aug. 22, 2024.)

- Omnibus motions filed by Rodman in the form of an affidavit from defense counsel ("Omnibus Mots.," ECF No. 51-1, Dec. 9, 2024);

- The government's opposition to Rodman's omnibus motions ("Opp'n," ECF No. 54, Dec. 20, 2024); and my

- Order on Rodman's omnibus motions ("Omnibus Order," ECF No. 61, Jan. 31, 2025.)

Notably absent from this list are exhibits, including warrants. Rodman has not provided any exhibits. I note that the government attached, as an exhibit, letters from the AUSA on this case to defense counsel showing that the government has disclosed voluntary discovery. (Opp'n Ex. 1, ECF No. 54-1, Dec. 20, 2024.)

## FACTUAL BACKGROUND

This case began with an investigation into Rodman and a co-defendant spanning the year before law enforcement arrested Rodman. (Walker Aff. ¶ 6, ECF No. 1.) I assume familiarity with the complaint and affidavit submitted in its support. I provide factual background only as to Rodman's involvement in an alleged conspiracy to distribute illegal drugs.

A confidential informant ("CI") knew of Rodman's co-defendant, Rodney Matthews, indicating to law enforcement in 2020 that Matthews told the CI that Matthews was obtaining a property to use as a location to receive and distribute cocaine and marijuana, which Matthews would obtain with weekly out-of-state trips. (*Id.* ¶ 7.) The CI informed law enforcement that Rodman was "security" for Matthews. (*Id.* ¶ 9.)

Law enforcement had the CI perform controlled buys from Matthews to solidify the CI's allegations.[1] (*See, e.g. id.* ¶ 14.) Law

---

[1] The complaint adds this about the CI's reliability:

CS-I [the "CI"] is a paid informant, that has demonstrated his/her reliability many times. For example, CS-I has provided information that was corroborated by agents and has conducting controlled purchases under the direction of law enforcement. CS-I has provided reliable information that has led to multiple federal narcotics seizures, arrests and convictions. CS-1 has worked as a confidential source multiple years. The CS has provided agents reliable information about narcotics trafficking that has been corroborated through independent investigation, consensual recordings of face-to-face and telephonic conversations, controlled purchases of narcotics, and information received independently and separately from other law enforcement agencies.

enforcement also observed other drug deals. (*Id.* ¶ 15.) During these buys, law enforcement observed Matthews stop at Rodman's residence at 270 Exchange Boulevard before heading to the site of the deal, parking in Rodman's reserved space (*Id.* ¶¶ 14–15.) Law enforcement confirmed that 270 Exchange Blouevard is Rodman's residence. (*Id.* ¶ 27.)

Accordingly, agents began to surveil 270 Exchange Boulevard. Rodman would drive up to the residence in a black Audi A8; law enforcement knew the vehicle was Rodman's because it was registered to him. (*Id.* ¶ 16.) In October 2023, law enforcement observed Rodman engage in what appeared to be a drug deal while using the Audi. (*Id.*)

As part of their surveillance, agents installed a camera "inside a common area of 270 Exchange Boulevard," near Rodman's apartment (*Id.* ¶ 18.) Camera footage showed that Matthews would enter 270 Exchange Boulevard after arriving by car before proceeding to a drug deal. (*Id.* ¶ 19 ("Between September 19[], 2023 and October 15[], 2023, [the camera] observed [Matthews] entering 270 Exchange Blvd Apartment 311 within minutes of [ ] Target Vehicle 1 being at 270 Exchange Blvd at least nine times." (alterations added).) This pattern remained the

---

Through interviews and debriefings, the CS indicated that the information the CS provided in this case was based upon either personal observations or personal conversations directly with the individual involved. As such, I believe the information provided by CS-1 and set forth in summary in this Affidavit is truthful, reliable and accurate.

(Walker Aff. ¶ 10, ECF No. 1.)

same for the controlled buys law enforcement performed with Matthews.[2]

### *Law enforcement recovers evidence of drug dealing during a search of Rodman's residence at 270 Exchange Boulevard.*

Along with Matthews' residence, law enforcement obtained a search warrant for Rodman's apartment at 270 Exchange Blvd in late October 2023. (*Id.* ¶ 28.) On entering Rodman's residence, law enforcement located Rodman "in the first[-]floor bedroom." (*Id.* ¶ 30.) When agents searched Rodman's bedroom at 270 Exchange Street, they located:

- an unlocked cell phone with messages indicative of drug sales;

- drug packaging material;

- a digital scale with a white powdery residue;

- and a safe containing a large sum of US currency amounting to at least $10,000.

---

[2] The Walker Affidavit notes controlled purchases from Matthews:

- "During the first week of July[] 2023," (Walker Aff. ¶ 11);

- "In the fourth week of July of 2023," (*id.* ¶ 12);

- "In the fourth week of August" 2023, (*id.* ¶ 14); and

- "In the third week of October 2023," (*id.* ¶ 20).

The government's opposition maintains that law enforcement performed other controlled buys not mentioned in the Walker Affidavit. (Opp'n ¶ 5 ("Over the course of the investigation a total of eight controlled buys were conducted in which [the CI] purchased cocaine directly from" Matthews. (alteration added)).)

(*Id.*) In another room, agents located "a black suitcase with suspected cutting agents, glass beakers with off-white residue, and two glassine bags with powder cocaine." (*Id.* ¶ 31.) In a walk-in closet in Rodman's residence, agents found even more evidence including about "41 kilogram[-]size wrappers, some containing a white powder residue." (*Id.* ¶ 33.) Agents field tested several wrappers; they tested positive for cocaine. (*Id.*) Law enforcement located additional evidence that is recounted in the Walker Affidavit. Law enforcement arrested Rodman and he made his initial appearance before me the same day. (Minute Entry, ECF No. 2, Oct. 24, 2023.)

## PROCEDURAL HISTORY

The procedural history of this case starts where my account of the factual history leaves off. This case began in October 2023 with the government bringing charges against Rodman and Matthews. (Compl. at 1, ECF No. 1, October 24, 2023.) Below, I have included the charges against Rodman from the indictment because they are relevant to analyzing the sufficiency of the indictment, which Rodman challenges:

- **Count 1:**

  Beginning in or about December 2020, the exact date being unknown to the Grand Jury, and continuing until on or about October 24, 2023, in the Western District of New York, the defendants, Rodney Matthews and Charles Rodman, did knowingly and intentionally combine, conspire, and agree with each other and others, known and unknown to the Grand Jury, to commit the following offenses, that is, to possess with intent to distribute, and to distribute, 500 grams or more of a mixture and substance containing cocaine, a Schedule II controlled substance, in violation of

Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B). All in violation of Title 21, United States Code, Section 846.

- **Count 2:**

  On or about October 24, 2023, in the Western District of New York, the defendants, Rodney Matthews and Charles Rodman, did knowingly and intentionally possess with intent to distribute 500 grams or more of a mixture and substance containing cocaine, a Schedule II controlled substance. All in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B), and Title 18, United States Code, Section 2.

- **Count 3:**

  Beginning on or about July 1, 2023, the exact date being unknown to the Grand Jury, and continuing until on or about October 24, 2023, Rodney Matthews and Charles Rodman, did unlawfully and knowingly use and maintain a place, that is, the premises at 270 Exchange Boulevard, Apartment 311, Rochester, New York, for the purposes of manufacturing, distributing, and using cocaine, a Schedule II controlled substance. All in violation of Title 21, United States Code, Section 856(a)(1), and Title 18, United States Code, Section 2.

(Indictment at 1–2, ECF No. 37.)

After his initial appearance, the government consented to Rodman's release on conditions. (Order, ECF No. 8, Oct. 31, 2023.) This case proceeded normally, with Rodman's counsel purportedly reviewing discovery,[3] and the parties discussing a plea deal.

---

[3] It appears that Rodman's counsel may have failed to review some of the discovery in this case. While not relevant for my analysis of Rodman's remaining omnibus motions, I am concerned by something the government said during oral argument. The government referenced its exhibits from its opposition to Rodman's omnibus motions. (Opp'n Ex. 1, ECF No. 54-1.) The government represented that it has two two-terabyte hard drives worth of discovery

In early March 2024, Rodman moved pursuant to Fed. R. Crim. P. 41(g) for the return of several items: (1) an Apple watch; (2) an iPhone; (3) house keys; (4) mailbox keys; and (5) what Rodman's counsel stated was "[c]ash from an inheritance in the approximate amount of $70,000." (Letter Mot. at 1–2, ECF No. 23, Mar. 4, 2024.) The government opposed in part, consenting only to the release of the Apple watch and the mailbox key. (Resp. in Opp'n at 7, ECF No. 26, Mar. 14, 2024.) In a text order, I allowed Rodman to reply. (ECF No. 27, Mar. 16, 2024.) I did so hoping Rodman would substantiate his motion. He did not.

I thus denied Rodman's motion except for those items the government agreed to turn over. (Order, ECF No. 28, Apr. 11, 2024.) I reasoned that I lacked subject matter jurisdiction based on a related DEA administrative forfeiture action. (Bench D&O, on file, Apr. 11, 2024.) I found that even if a DEA forfeiture proceeding were not pending, I would still reject Rodman's motion because he provided no information about his possessory interest in the items he wanted returned. (*Id.*) Simply stating that he was "requesting the return of the [ ] property pursuant to Rule 41" was not enough. (Letter Mot. at 1, ECF No. 23.) Ultimately, I found that Rodman failed to meet his burden of showing that "he [was] entitled to lawful possession of the seized property." (Bench D&O, on file (quoting *United States v. Dygert*, 610 F. Supp. 3d 522, 524 (W.D.N.Y. 2022)).)

─────────────

that Rodman's counsel appears not to have reviewed. That is because the government has not received a hard drive from Rodman's counsel onto which the government could copy these four terabytes worth of discovery.

Although Rodman objected to my ruling, he did not appeal it to the District Court. (Minute Entry, ECF No. 29, Apr. 11, 2024.)

In late July 2024, having let this case play out for nearly a year, I indicated my desire to hold a preliminary hearing for Rodman after a final adjournment. (Minute Entry, ECF No. 36, July 23, 2024 ("The Court will grant the parties a final 30-day adjournment to finalize resolutions [sic] discussions, and intends to hold a Preliminary Hearing should no resolution be agreed upon within that time.").) Rodman had ample time to decide whether to accept a plea deal. Unsurprisingly, the government presented this case to the Grand Jury, which indicted Rodman. (ECF No. 37.)

Chief Judge Wolford referred the newly indicted case to me for all pretrial matters. (Text Order of Referral, ECF No. 39, Aug. 22, 2024.) I arraigned Rodman and set a briefing schedule for omnibus motions. (Scheduling Order, ECF No. 43, Sept. 5, 2024.) The Court's e-filing system should have alerted Rodman to file his omnibus motions in the "CR" case. Yet rather than file his omnibus motions in the new "CR" case, Rodman's counsel filed them in the closed "MJ" case. (Order at 2, ECF No. 50, Dec. 6, 2024 (noting that a "notice of merge" was delivered to the parties electronically on August 22, 2024).)

My later order recounts what happened when Court staff tried to help defense counsel correct his mistake. (*See generally id.*) I was not pleased that Rodman's counsel failed to comply with the Court's

9

directive about how to file omnibus motions for his client, especially considering the years of experience this defense counsel has in federal court. Counsel's failure resulted in wasted time for my staff and me. Eventually, I ordered Rodman's counsel to submit omnibus motions in the correct case by December 10, 2024. (*Id*. at 4.) Rodman's counsel did so. (ECF No. 51.)

### I hold oral argument on Rodman's omnibus motions and invite Rodman to submit additional materials.

With Rodman's 30[4] omnibus motions filed on the correct case, I held oral argument. (Minute Entry, ECF No. 60, Jan. 28, 2025.) Relevant here, I reserved decision on Rodman's motions seeking

- (1) a bill of particulars;

- (2) dismissal of the indictment for insufficiency;

- (3) dismissal of the indictment because of selective prosecution;

- (4) suppression of tangible evidence; and

- (5) suppression of statements.

(Omnibus Order at 2, ECF No. 61.) For motions (4) and (5), I directed Rodman to submit an affidavit or declaration by no later than February 11, 2025. (*Id*.) The order warned Rodman that "[f]ailure to file such an affidavit may result in the undersigned reporting and recommending that the District Judge deny any applicable motion(s)." (*Id*.) I added that

---

[4] This was my count based on how I construed Rodman's motions.

I might "extend the time for [Rodman] to file such affidavits if [he] indicate[d] on or before February 11, 2025, that [he] intends to accept a plea offer from the government." (*Id.* (alterations added).) The government indicated on the record during oral argument that it had extended an approved plea offer to Rodman's counsel on December 30, 2025. (*See id.*)

Although I later learned that Rodman scheduled a plea before Chief Judge Wolford, Rodman has filed no affidavit nor sought any extension of the time to file one. Because Rodman's plea before the Chief Judge did not proceed, (Minute Entry, ECF No. 69, Mar. 31, 2025), and given my deadline of February 11, I determined that I should issue my report and recommendation as soon as possible to move this case forward.

## THE MOTION FOR BILL OF PARTICULARS

This District has consistently held that motions for bills of particulars are non-dispositive. *See, e.g., United States v. Nagi*, 254 F. Supp. 3d 548, 556 (W.D.N.Y. 2017) ("The Court reviews [Magistrate] Judge Scott's order granting a bill of particulars to determine whether the order is 'clearly erroneous or contrary to law.'" (alteration added) (quoting 28 U.S.C. § 636(b)(1)(A))); *United States v. Gibson*, No. 13-CR-6156, 2018 WL 903514, at *2 (W.D.N.Y. Feb. 15, 2018) (reviewing magistrate judge's denial of bill of particulars motion under clearly erroneous standard); *United States v. Justiniano*, No. 07-CR-6024L, 2008 WL 2222001, at *1 (W.D.N.Y. May 29, 2008) (same), *aff'd*, 401 F. App'x 595 (2d Cir.

2010). After all, Fed. R. Civ. P. 59(a) states that the "district judge may refer to a magistrate judge for determination any matter that does not dispose of a charge or defense." Thus, I issue a decision and order for this motion.

When the government writes an indictment in general terms that the Grand Jury approves, a defendant may move under Fed. R. Crim. P. 7(f) for "a bill of particulars … setting forth the specific allegations of the offense charged." *United States v. Wozniak*, 126 F.3d 105, 110 (2d Cir. 1997). Rule 7(f) provides:

> The court may direct the government to file a bill of partic-
> ulars. The defendant may move for a bill of particulars be-
> fore or within 14 days after arraignment or at a later time
> if the court permits. The government may amend a bill of
> particulars subject to such conditions as justice requires.

Fed. R. Crim. P. 7(f). And so, "Rule 7(f) of the Federal Rules of Criminal Procedure permits a defendant to seek a bill of particulars in order to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prose-cuted a second time for the same offense." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987). "The decision of whether or not to grant a bill of particulars rests within the sound discretion of the district court." *Id.* (citation omitted). "It is the defendant's burden to show that a bill of particulars is necessary." *Nagi*, 254 F. Supp. 3d at 562 (citing *United States v. Ferguson*, 478 F. Supp. 2d 220, 226 (D. Conn. 2007)).

Here, Rodman fails to meet his burden. He conclusorily states that the particulars he requests

> are essential to enable the Defendant to prepare his defense, to avoid surprise at the time of trial and to protect him from being subject to double jeopardy as to any further prosecution. In addition, such matters are also necessary because the allegations set forth in the indictment are for the most part, strictly conclusory and fail to set forth with specificity, the time, place and manner it is alleged that the defendant engaged in criminal activity.

(Omnibus Mots. ¶ 49, ECF No. 51-1.) *First*, this barebones argument tells me nothing about why the indictment in this case fails to advise Rodman of "the specific acts of which he is accused." *United States v. Chen*, 378 F.3d 151, 163 (2d Cir. 2004) (cleaned up). As such, I find Rodman's argument "conclusory, boilerplate, undeveloped and bereft of any supporting case authority." *United States v. Elliott Fuentes*, No. 9-CR-00143-RJA-JJM, 2012 WL 4754736, at *3 (W.D.N.Y. Apr. 25, 2012), *report and recommendation adopted sub nom. United States v. Fuentes*, No. 09-CR-143A, 2012 WL 4754744 (W.D.N.Y. Oct. 4, 2012). Because Rodman's arguments "are raised in such a fashion, I consider them" forfeited. *Id.* (citation omitted). But that is not all.

*Second*, Rodman's motion likewise fails to state whether the information Rodman seeks was available in "some acceptable alternative form," such as discovery materials or the affidavit in support of the complaint that started this prosecution. *United States v. Desantis*, 802 F. Supp. 794, 797–98 (E.D.N.Y. 1992). I find this is an independent basis on which to reject Rodman's motion.

*Finally*, Rodman provides no meaningful argument about factors courts commonly consider, such as

- [1] the clarity of the indictment;

- [2] the duration and breadth of the alleged conspiracy, *i.e.*, the complexity of the crime charged;

- [3] whether the government has provided adequate notice of the particulars;

- [4] the potential danger to co-conspirators, witnesses, or victims; and

- [5] and the nature of the alleged criminal conduct.

*United States v. Tournant*, No. 22-CR-276-LTS, 2023 WL 8649893, at *2 (S.D.N.Y. Dec. 13, 2023) (alterations added and block quotation reformatted as a list) (citing *United States v. Lino*, No. 00 CR. 632 (WHP), 2001 WL 8356, at *4 (S.D.N.Y. Jan. 2, 2001) (collecting cases)). In any event, as my discussion below about the sufficiency of the indictment demonstrates, the indictment is not so defective as to warrant a bill of particulars. For these reasons, Rodman has provided no basis for an order directing the government to provide a bill of particulars. I deny this motion by decision and order. I am issuing a report and recommendation for all other motions.

## THE MOTION TO SUPPRESS TANGIBLE EVIDENCE

"As the party moving to suppress, defendant bears the burden of establishing his standing"—*i.e.*, that he "had a legitimate expectation of

privacy that was violated by the Government's conduct." *United States v. Loera*, 333 F. Supp. 3d 172, 179 (E.D.N.Y. 2018), *aff'd sub nom. United States v. Guzman Loera*, 24 F.4th 144 (2d Cir. 2022) (internal quotation marks and brackets omitted). "This burden is met only by sworn evidence, in the form of affidavit or testimony, from the defendant or someone with personal knowledge." *Id.* (internal quotation marks omitted).

In this case, Rodman asks for blunderbuss suppression "of all evidence seized at [sic] from Defendant, Charles Rodman, at any location." (Omnibus Mots. ¶ 133, ECF No. 51-1.) Setting aside counsel's failure to develop any fact-based argument, Rodman has provided nothing (an affidavit or declaration of standing, *e.g.*) to show he had a reasonable expectation of privacy in relation to any search law enforcement conducted. This is fatal to his motion to suppress tangible evidence. *See, e.g., United States v. Rivera-Figueroa*, No. 17CR00183LJVJJM, 2018 WL 7291428, at *11 (W.D.N.Y. Aug. 21, 2018) ("It is well settled that '[a] defendant seeking to suppress evidence must demonstrate by a preponderance of the evidence that he had a reasonable expectation of privacy in the location or items searched.'" (quotation omitted)), *report and recommendation adopted*, No. 17-CR-183, 2019 WL 244490 (W.D.N.Y. Jan. 17, 2019).

Indeed, this report and recommendation gives me a case of déjà vu. In an earlier case, I dealt with the same issue with the same defense counsel. I noted there that "[i]t is settled law that '[t]he party moving to

suppress bears the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure.'" *United States v. Figueroa*, No. 18-CR-6094-FPG-MJP-1, 2020 WL 5260866, at *3 (W.D.N.Y. May 22, 2020) (quoting *United States v. Osorio*, 949 F.2d 38, 40 (2d Cir. 1991)), *report and recommendation adopted sub nom. United States v. Javier Figueroa*, No. 18-CR-6094-FPG, 2020 WL 3481454 (W.D.N.Y. June 26, 2020). There, as here, I found that "[t]he movant must show that he had an expectation of privacy in the invaded place and that the expectation was legitimate, one that society is prepared to recognize as reasonable." *Id*. (quoting *Osorio*, 949 F.2d at 40).

Then-Chief Judge Geraci agreed, rejecting that defendant's objections to my report and recommendation concerning standing, writing:

> Defendant has not proffered evidence sufficient to meet this standard. The fact the government has charged Defendant based on evidence obtained via the search warrants does not automatically confer standing on Defendant to challenge the search warrants. It is well-settled that a defendant cannot demonstrate standing by "relying solely on the government's theory of the case." *United States v. Cody*, 434 F. Supp. 2d 157, 167 (S.D.N.Y. 2006); *see also United States v. Watson*, 404 F.3d 163, 166 (2d Cir. 2005) (stating that "defendant could not challenge the search of a residence merely because he anticipated that the Government [would] link the objects recovered in that search to defendant at trial"); *United States v. Marshall*, No. 11-CR-381, 2012 WL 5511645, at *2 (W.D.N.Y. Nov. 9, 2012) (noting that a "defendant's unsworn assertion of the Government's representations does not meet his burden to establish standing to contest the search" (internal quotation marks and brackets omitted)). Furthermore, Defendant's concern about self-incrimination is unfounded insofar as "testimony given by a defendant in support of a motion to suppress cannot be admitted as evidence of his guilt at trial." *United States v. Salvucci*, 448 U.S. 83, 88 (1980).

*Javier Figueroa*, 2020 WL 3481454, at *1. I see no reason to reach a different result here.

Accordingly, I report and recommend that Rodman's motions to suppress tangible evidence be denied without a hearing. *See Figueroa*, 2020 WL 5260866, at *3 ("Courts in this Circuit have 'repeatedly' denied motions to suppress without a hearing where defendants have failed to provide affidavits alleging facts based on personal knowledge." (quoting *United States v. Robinson*, No. 16-CR-545-ADS-AYS-1, 2017 WL 5135598, at *10 (E.D.N.Y. Nov. 1, 2017))). As I noted in *Figueroa*, Rodman's current motion does not specify "what tangible evidence [Rodman] seeks to suppress." *Id*. Suffice it to say, I am deeply troubled that Rodman's counsel failed to learn from his earlier misadventure.

*One final note*. Rodman requests, without citing any authority or factual basis, "that the matter be heard by a Judge different from the issuing Judge with respect to this matter." (Omnibus Mots. ¶ 133, ECF No. 51-1.) This is **not** the kind of request Rodman's counsel should raise absent some support. Rodman presents no serious argument for my recusal, nor does he present anything that could reasonably call into question my impartiality. I thus decline his request and report and recommend that the Chief Judge do the same.

## THE MOTION TO SUPPRESS STATEMENTS

"An evidentiary hearing on a motion to suppress ordinarily is required 'if the moving papers are sufficiently definite, specific, detailed,

and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question.'" *United States v. Pena*, 961 F.2d 333, 339 (2d Cir. 1992) (quoting *United States v. Licavoli*, 604 F.2d 613, 621 (9th Cir. 1979)). As with his motion to suppress tangible evidence, Rodman fails to raise an issue of fact sufficient to hold a hearing on his motion to suppress statements.[5] *See United States v. Cook*, 348 F. Supp. 2d 22, 28 (S.D.N.Y. 2004) ("[A] Defendant must do more than make the 'bald assertion' of impropriety ... in order to sustain a request for a suppression hearing.").

I have no sworn statement from Rodman before me. I likewise have no other sources of personal knowledge raising an issue of fact before me. I must recommend denial because Rodman fails to "raise a factual basis" for his motion to suppress. *United States v. Czosnyka*, No. 20-CR-150V, 2022 WL 18584350, at *3 (W.D.N.Y. Dec. 19, 2022), *report and recommendation adopted*, No. 20-CR-150-LJV-HKS, 2023 WL 1476680 (W.D.N.Y. Feb. 2, 2023). The same goes for Rodman's failure to raise any

---

[5] This was not a difficult task for Rodman's counsel to perform, at least with respect to *Miranda*. All a *defendant* needs to indicate is that "*Miranda* warnings were not given." *United States v. Mathurin*, 148 F.3d 68, 69 (2d Cir. 1998) (conclusory assertion that "*Miranda* warnings were not given" held sufficient to require a hearing because "although the assertion that warnings were not given is conclusory, any statement that a specific event did not occur will normally be conclusory"). But I have only Rodman's *counsel's* omnibus motions before me, without any indication that Rodman's counsel has personal knowledge of the circumstances under which law enforcement interrogated Rodman. *See Javier Figueroa*, 2020 WL 3481454, at *2 ("Defense counsel does not have personal knowledge of the underlying events, and therefore his allegations in the omnibus motion do warrant a hearing, let alone relief.").

issue of fact concerning the voluntariness of his statements. *See United States v. Alawi*, No. 20CR192JLSJJM, 2021 WL 2252808, at \*6 (W.D.N.Y. June 2, 2021) ("Indeed, conclusory statements by a defendant that depend on 'the characterization of a set of circumstances, such as ... the voluntariness of a statement,' are 'not sufficient to require a hearing.'" (quoting *Malthurin*, 148 F.3d at 68)).

Rodman had the burden of raising such an issue. *See United States v. Lewis*, 62 F.4th 733, 741 (2d Cir. 2023) ("As the proponent of the motion to suppress, it was [the defendant's] burden to establish that the search violated his Fourth Amendment rights." (alteration added) (citing *Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978))); *United States v. Ahmad*, 992 F. Supp. 682, 685 (S.D.N.Y. 1998) (noting that a defendant "seeking to raise a factual issue to be determined at a [suppression] hearing must submit admissible evidence which, if credited, would make out a prima facie case on the issue" (alteration added)).

Finally, I note that Rodman's counsel has given me no basis for concluding that he has personal knowledge of the circumstances under which law enforcement interviewed Rodman. Indeed, Rodman points me to no specific interview, for example. Instead, Rodman's counsel flatly states that law enforcement gave no *Miranda* warnings. (Omnibus Mots. ¶¶ 124–25, ECF No. 51-1.) As with Rodman's other motions, this is inadequate. I thus report and recommend that Rodman's motion to suppress statements be denied without a hearing.

## THE MOTIONS TO DISMISS THE INDICTMENT

Lastly, Rodman moves to dismiss the indictment on two grounds. First, Rodman moves to dismiss the indictment for insufficiency. Second, he moves to dismiss the indictment because of selective prosecution. These motions lack merit.

### Rodman provides no basis for his selective prosecution motion.

I begin with Rodman's motion to dismiss the indictment based on selective prosecution. Rodman's selective prosecution motion discusses none of the facts of this case:

> As the Court can see from all of the papers had herein, prosecution of the Defendant, Charles Rodman, is selective as opposed to other individuals including the Confidential Informants and other unindicted co-conspirators with greater culpability than the Defendant and, as such, the prosecutor's decision not to commence proceedings against these individuals amounts to selective prosecution and, as such, it is requested that the charges against the Defendant be dismissed.

(Omnibus Mots. ¶ 61, ECF No. 51-1.) This lone paragraph to support Rodman's selective prosecution motion is emblematic of defense counsel's spaghetti-to-the-wall approach.

But seeing which motions stick does not serve Rodman well. Selective prosecution motions require a strong showing from the defendant. This is because "the Attorney General and the United States Attorneys retain 'broad discretion' to enforce the Nation's criminal laws." *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (quoting *Wayte v. United States*, 470 U.S. 598, 607 (1985)). Thus, a "presumption of

regularity" applies to prosecutors' decisions. *Id*. And so, "in the absence of clear evidence to the contrary," courts must conclude that prosecutors "have properly discharged their official duties." *Id*. "[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in [the prosecutor's] discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978).

A defendant moving to dismiss for selective prosecution[6] accordingly "bears the heavy burden of establishing, at least *prima facie*, (1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution," and "(2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith[.]" *United States v. Berrios*, 501 F.2d 1207, 1211 (2d Cir. 1974). The first of these "requires a showing that similarly

---

[6] Courts acknowledge that a defendant can make a "correspondingly rigorous … but of course not identical" showing to obtain discovery regarding selective prosecution. *United States v. Alameh*, 341 F.3d 167, 173 (2d Cir. 2003) (internal citation and quotation omitted). This showing requires the defendant to "produce 'some' evidence of discriminatory effect and intent." *Id*. (citing *United States v. Bass*, 536 U.S. 862, 863 (2002)). Rodman does not raise this aspect of selective prosecution, so I find he has forfeited this argument. On the merits, moreover, Rodman has provided no "evidence that similarly situated defendants of other races could have been prosecuted, but were not." *Id*. (quoting *Armstrong*, 517 U.S. at 469). Either way, Rodman's argument fails.

situated individuals of a different classification were not prosecuted." *Alameh*, 341 F.3d at 173 (cleaned up).

Here, Rodman's motion fails under both requirements. While at oral argument Rodman fleshed out his argument somewhat by stating that there are unindicted co-conspirators, he did not elucidate whether they are of a "different classification." Rodman cannot use conjecture to show that "similarly situated individuals of a different classification were not prosecuted." *Alameh*, 341 F.3d at 173 (quoting *Armstrong*, 517 U.S. at 465 (cleaned up).

Next, Rodman cites no record evidence to show that the government is proceeding in bad faith. Indeed, he does not even mention this prong in making his motion. On this separate basis, Rodman's motion fails.

Rodman's failure to meet the applicable standard dovetails with another point: This motion—like others I am considering here—is perfunctory. Rodman makes no serious argument that this prosecution is "based on an animus of [the] kind [that] would call for some remedy." *Rajah v. Mukasey*, 544 F.3d 427, 438 (2d Cir. 2008) (alterations added and citation omitted). Put differently, he does not indicate that this prosecution is based on his "religion, ethnicity, gender, [or] race." *Id.* (alteration added) (citing *Armstrong*, 517 U.S. at 464). He merely cries selective prosecution. That is not enough. *Elliott Fuentes*, 2012 WL 4754736, at *3 (deeming forfeited arguments that were "conclusory, boilerplate,

undeveloped and bereft of any supporting case authority"). I report and recommend that this motion be denied.

### *Rodman likewise provides no basis for dismissal of the indictment based on insufficiency.*

Without recognizing the presumption of regularity that attaches to Grand Jury proceedings in federal court, *Hamling v. United States*, 418 U.S. 87, 139 n.23 (1974), Rodman asserts that the indictment involved here is insufficient:

> 121. Based on the above referenced information, it is verily believed that this Indictment is woefully deficient in each and every respect.

> 122. It is further inferred that the Grand Jury was made to conclude that persons [sic] contacts with others which may as easily been innocent were unlawfully presumed to be culpable. It is, therefore, necessary the Court conduct its own investigation as to the sufficiency of evidence before the Grand Jury as well as the propriety of the Government's conduct with that body. Also, a review of the paperwork in this case indicates that nothing exists to identify the Defendant as being involved in this case.

> 123. Wherefore, it is respectfully submitted that should this Court find such defects in the Grand Jury process held herein, that the Indictment be dismissed.

(Omnibus Mots. ¶¶ 121–23, ECF No. 51-1.) Construing this portion of Rodman's omnibus motions generously, I see two arguments. First, Rodman contends that the indictment is invalid on its face. Second, I find that Rodman accuses the government of improper conduct before the Grand Jury. These arguments lack an adequate factual basis.

**Because the indictment is valid on its face, I decline to entertain a challenge to the sufficiency of the evidence.**

Every "indictment … must be a plain, concise, and definite written statement of the essential fact constituting the offense charged." Fed. R. Crim. P. 7(c)(1). "An indictment is sufficient if it *first*, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, *second*, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Stringer*, 730 F.3d 120, 124 (2d Cir. 2013) (emphasis added). The Second Circuit has indicated that "common sense and reason are more important than technicalities[.]" *Id.* The indictment thus "need not be perfect." *Id.*

In this case, Rodman bears the burden in seeking dismissal of the indictment. *See United States v. Post*, 950 F. Supp. 2d 519, 527 (S.D.N.Y. 2013) ("A defendant faces a 'high standard' in seeking to dismiss an indictment … because an indictment need provide the defendant only 'a plain, concise, and definite written statement of the essential facts constituting the offense charged[.]'" (quoting Fed. R. Crim. P. 7(c)(1))). "Courts must accept as true the allegations in an indictment for purposes of evaluating a motion to dismiss." *United States v. Marsalis*, 314 F. Supp. 3d 462, 465 (E.D.N.Y. 2018) (citations omitted). And so, the Second Circuit "has consistently upheld indictments that do little more than [ ] track the language of the statute charged and state the time and

place (in approximate terms) of the alleged crime." *United States v. Ghayth*, 709 F. App'x 718, 723 (2d Cir. 2017).

Having reviewed the indictment,[7] I fail to see how it is "woefully deficient" (or just deficient) in any respect. *First*, the indictment tracks the language of the statutes under which Rodman is charged. As such, the indictment sets forth "all of the essential elements of the crime[s]" with which Rodman is charged. *United States v. Gonzales*, 686 F.3d 122, 127 (2d Cir. 2012). *Second*, each count provides approximate timeframes and locations identifying when and where the alleged crimes took place. So, the indictment is specific enough to permit Rodman to prepare his defense. *United States v. Walsh*, 194 F.3d 37, 44 (2d Cir. 1999). *Third*, the indictment provides drug quantities and types as this is an element of narcotics offenses. *United States v. Thomas*, 274 F.3d 655, 660 (2d Cir. 2001) (*en banc*).

*Finally*, although Rodman asks me to recommend a court inquiry into the sufficiency of the facts underlying the indictment, his request runs headlong into Second Circuit precedent indicating I should not entertain such an application:

> At the indictment stage, we do not evaluate the adequacy of the facts to satisfy the elements of the charged offense. That is something we do after trial. Otherwise, we would effectively be asking district courts to engage in summary judgment proceedings—something that does not exist in federal criminal procedure.

---

[7] The relevant contents of the indictment are provided *supra*.

*United States v. Dawkins*, 999 F.3d 767, 780 (2d Cir. 2021); *see also United States v. Fisher*, 225 F. Supp. 3d 151, 163 (W.D.N.Y. 2016) (noting the "well-settled rule that 'an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence.'" (quoting *United States v. Calandra*, 414 U.S. 338, 345 (1974))).

The validity of the indictment in this case is "enough to call for [a] trial of the charge on the merits." *Costello v. United States*, 350 U.S. 359, 363 (1956). As this District has explained, "entertaining such challenges would not only undermine the historic independence of the grand jury's evidence-gathering and deliberative functions, but it would also (as this case demonstrates) result in delay," requiring the court to hold "a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury." *Fisher*, 225 F. Supp. 3d at 163 (internal quotation marks omitted) (quoting *Costello*, 350 U.S. at 363). I thus reject Rodman's argument that the indictment is insufficient on its face and lacks factual support. As my account of the complaint and supporting affidavit demonstrates, there is ample evidence connecting Rodman to the criminal conspiracy in this case. Even if the indictment in this case were faulty (it is not), the government could seek a superseding indictment before trial.

### Rodman fails to meet his burden of showing grand jury misconduct—prosecutorial or otherwise.

To the extent that Rodman contends that the government or Grand Jury engaged in misconduct affecting the indictment, his argument is unsupported. As noted, there is a presumption of regularity: "[T]he law presumes, absent a strong showing to the contrary, that a grand jury acts within the legitimate scope of its authority." *United States v. R. Enterprises, Inc.*, 498 U.S. 292, 300 (1991) (citations omitted).

"Moreover, law in this Circuit is clear that grand jury proceedings receive a presumption of secrecy and closure." *United States v. Gerace*, No. 119CR227JLSMJR, 2022 WL 17478270, at *10 (W.D.N.Y. Aug. 5, 2022) (citing *In re Grand Jury Subpoena*, 103 F.3d 234, 239 (2d Cir. 1996)), *report and recommendation adopted sub nom. United States v. Bongiovanni*, No. 19CR227JLSMJR, 2022 WL 17139489 (W.D.N.Y. Nov. 22, 2022). "Because of these principles, a defendant seeking disclosure of grand jury minutes must show a particularized need, in that (1) the material sought is necessary to avoid a possible injustice in another judicial proceeding," that is, in his or her pending criminal case, "(2) the need for disclosure outweighs the need for continued secrecy, and (3) the request is structured to cover only what is needed." *Id.* (citing *In re Grand Jury Subpoena*, 103 F.3d at 239). "Unspecified allegations of impropriety or mere speculation are not sufficient to satisfy this heavy

burden." *United States v. Lincoln*, No. 19-CR-6047CJS, 2019 WL 7198227, at *14 (W.D.N.Y. Dec. 23, 2019) (citing *Calandra*, 414 U.S. at 345), *report and recommendation adopted,* No. 19-CR-6047 CJS/MWP, 2020 WL 3286472 (W.D.N.Y. June 18, 2020). Thus, "review of grand jury minutes is rarely permitted without specific factual allegations of government misconduct." *Id.* (quoting *United States v. Torres*, 901 F.2d 205, 233 (2d Cir. 1990), *abrogated on other grounds by United States v. Marcus*, 628 F.3d 36, 41 (2d Cir. 2010)).

Here, Rodman's conclusory assertions of misconduct are insufficient to meet this heavy burden. *See United States v. Smith*, No. 1:23-CR-00110-RJA-MJR, 2024 WL 4545904, at *5 (W.D.N.Y. Aug. 29, 2024) (rejecting defendant's request for grand jury materials because the Court was presented "with a facially valid [i]ndictment and no factual allegations from defendant to support his claims" of misconduct), *report and recommendation adopted*, No. 23-CR-110-A, 2024 WL 4545170 (W.D.N.Y. Oct. 22, 2024). Thus, on this record, Rodman fails to show a particularized need or any other compelling reason for the Court to release grand jury material. *See United States v. Donald*, No. 07-CR-6208L, 2009 WL 270181, at *6 (W.D.N.Y. Feb. 4, 2009) (speculation about inadequacy of jury instructions insufficient to invade grand jury secrecy), *report and recommendation adopted*, No. 07-CR-6208L, 2009 WL 960209 (W.D.N.Y. Apr. 7, 2009), *aff'd*, 417 F. App'x 41 (2d Cir. 2011).

And so, I report and recommend that Rodman's motion to dismiss the indictment be denied in full.

## CONCLUSION

I report and recommend that the four dispositive motions be denied in full. I deny Rodman's motion for a bill of particulars by decision and order.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 59(b) of the Local Rules of Criminal Procedure for the Western District of New York.[7]

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See*, *e.g.*, *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

<u>**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**</u> *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v.*

*Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 59(b) of the Local Rules of Criminal Procedure for the Western District of New York, "[w]ritten objections ... shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **<u>Failure to comply with the provisions of Rule 59(b) may result in the District Court's refusal to consider the objection.</u>**

**IT IS SO ORDERED.**

Dated:     April 1, 2025
          Rochester, NY          */s/ Mark W. Pedersen*
                                 _____
                                 MARK W. PEDERSEN
                                 United States Magistrate Judge